

1  JUNE LATRYLE PATTON
   13621 PINE ARBOR TRAIL
2  Manor, Texas 78653
   Telephone: 512.808-3630
3
4  Pro Se

5

6              IN THE UNITED STATES DISTRICT COURT

7                 WESTERN DISTRICT OF TEXAS

8                       AUSTIN DIVISION

9

10 JUNE LATRYLE. PATTON         Case No.:

11   Plaintiff,

12 vs.                          COMPLAINT 1:21CV0606 LY

13
   MERRICK BANK CORP
14                              DEMAND FOR JURY TRIAL
     Defendant.
15

16

17

18
                I.   **INTRODUCTION**
19
       1.   Plaintiff brings this action against Defendant MERRICK BANK CORP., based
20
   upon the claim that Defendant has failed to comply with the statutory requirements of the Fair
21
   Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, ("FCRA" or the "Act"), by failing to provide
22
   notice to the Credit Reporting Agencies (CRAs) that derogatory items were disputed by
23
   consumer; by failing to report to credit reporting agencies that certain late payments had been
24
   made by consumer resolving outstanding those debt service payments; by failing to investigate
25
   disputed items reported to them by the credit reporting agencies and by failing to report to
26
   consumer that derrogatories were made to the credit reporting agencies regarding her credit. This
27
   conduct is clearly proscribed by the Act and is subject to statutory penalties for each violation.
28

                                       - 1 -
COMPLAINT: PATTON v MERRICK BANK.

2.  The digitalization of our society has resulted in an exponential increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether used by businesses, banks, the Internal Revenue Service, or other institutions, allows individual consumer information to flow directly and instantaneously to requesting parties. While timely distribution of information has obvious advantages, and may provide faster and better decision-making by its recipients, like banks, nonetheless all members of society should benefit from this convenience and efficiency as well as be protected from potential inaccuracies, glitches or intentional abuses of such lightning fast digital flow of information.

3.  The FCRAs wise institution of statutory penalties was prescient insofar as information flow has readily become subject to mishandling, misuse, and mal use. Individual consumers have concomitantly been subjected to substantial damage, both emotional and economic, whenever inaccurate, false, or fraudulently misdirected information is disseminated and/or obtained about them. In fact, Equifax Information Services, LLC, expressly acknowledges the potential for misuse and resulting damage every time it solicits its credit monitoring service to a consumer.

4.  Credit Reporting Agencies sell to ready paying subscribers (*i.e.*, banks, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports" concerning individuals who may be applying for retail credit, such as for a car loan, credit cards, mortgage loans and the like.

5.  Since 1970, when Congress enacted the Fair Credit Reporting Act, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.  One of the primary purposes in requiring CRA's to assure maximum possible accuracy of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. (*See* 15 U.S.C. § 1681(a)(1).7).

COMPLAINT: PATTON v. MERRICK BANK

2. The digitalization of our society has resulted in an exponential increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether used by businesses, banks, the Internal Revenue Service, or other institutions, allows individual consumer information to flow directly and instantaneously to requesting parties. While timely distribution of information has obvious advantages, and may provide faster and better decision-making by its recipients, like banks, nonetheless all members of society should benefit from this convenience and efficiency as well as be protected from potential inaccuracies, glitches or intentional abuses of such lightning fast digital flow of information.

3. The FCRAs wise institution of statutory penalties was prescient insofar as information flow has readily become subject to mishandling, misuse, and mal use. Individual consumers have concomitantly been subjected to substantial damage, both emotional and economic, whenever inaccurate, false, or fraudulently misdirected information is disseminated and/or obtained about them. In fact, Equifax Information Services, LLC, expressly acknowledges the potential for misuse and resulting damage every time it solicits its credit monitoring service to a consumer.

4. Credit Reporting Agencies sell to ready paying subscribers (*i.e.*, banks, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports" concerning individuals who may be applying for retail credit, such as for a car loan, credit cards, mortgage loans and the like.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6. One of the primary purposes in requiring CRA's to assure maximum possible accuracy of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. (*See* 15 U.S.C. § 1681(a)(1).7).

7. The preservation of one's good name is at the heart of the FCRA's purposes: "[W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin one's reputation without cause, and make them unemployable or uninsurable, as well as deny her the opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of her good name without her knowledge and without reason.... As Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.* Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [QUOTING 116 Cong. Rec. 36570 (1970)]" /emphasis added/.

8. To further the primary goal of greater accuracy, the FCRA has also required CRAs and "furnishers" of credit information, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

9. This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff, JUNE LATRYLE PATTON against MERRICK BANK CORP, for their intentional, willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## II. JURISDICTION AND VENUE

10. This Court has federal question jurisdiction because this case arises out of violation of federal law pursuant to 18 U.S.C. § 1962.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within the judicial district of this court; (ii) the conduct complained of herein occurred within this judicial district.

## III. PARTIES

- 3 -

COMPLAINT: PATTON v. MERRICK BANK

12. Plaintiff JUNE LATRYLE PATTON, is an individual residing in Travis County, State of Texas. Plaintiff is a businesswoman and prior to the acts of Defendant, a holder of a good financial reputation and positive credit rating.

13. Defendant MERRICK BANK CORP ("MB") is a corporation organized in the State of Delaware, with its main office listed as, 10705 SOUTH JORDAN GATEWAY, SUITE 200, SOUTH JORDAN, UTAH. 84095. MERRICK BANK CORP as of this filing, has no consumer branch in Texas. MERRICK BANK CORP is a "furnisher" as that term is defined under the Act. Defendant MERRICK BANKCORP is a direct participant in the wrongful and malicious acts in the transaction of the subject credit reporting herein in violation of the Act.

### IV. FACTUAL ALLEGATIONS

14. On or about Sept 10, 2020, plaintiff June Latryle Patton, mailed defendant MERRICK BANK CORP, an affidavit of fact, dated (Sept 4, 2020), notifying them that she was a victim of identity theft, and the negative mark placed in her CRA credit file was not associated with her. MERRICK BANK CORP ignored such affidavit, leaving negative mark in her personal credit file, thus impeding her constitutional ability to contract.

15. On or about NOV 11, 2020, plaintiff June Latryle Patton, again mailed defendant MERRICK BANK CORP, said affidavit of fact, notifying them that she was a victim of identity theft, and the negative mark placed in her CRA credit file was not associated with her. MERRICK BANK again ignored such affidavit, leaving negative mark in her personal credit file, impeding her constitutional ability to contract.

16. On or about FEB 4, 2021, plaintiff June Latryle Patton, again mailed defendant MERRICK BANK CORP, an affidavit of fact, notifying them that she was a victim of identity theft, and the negative mark placed in her credit file was not associated with her. MERRICK BANK CORP again ignored such affidavit, leaving negative mark in her personal credit file, impeding her constitutional ability to contract.

17. On or about APRIL 27, 2021, plaintiff June Latryle Patton, entreated paralegal firm Mike Garcia & Assoc, to write defendant MERRICK BANK CORP again, notifying them that

- 4 -

1  she was a victim of identity theft, and the negative mark placed in her credit file was not
2  associated with her. MERRICK BK again ignored such affidavit, leaving negative mark in her
3  personal credit file, impeding her constitutional ability to contract.

4       18. On or about May 5, 2021 plaintiff June Latryle Patton, again wrote mailed defendant
5  Merrick Bank Corp, an affidavit of fact, notifying them that she was a victim of identity theft, and
6  the negative mark in her file was not associated with her, MERRICK BANK CORP did this time
7  respond, with letter dated May 20, 2021, stating that they had conducted a investigation, and
8  determined that it was indeed her, who had incurred this liability.

9       19. Plaintiff and advisor/affiant hoped to call and try to resolve this reckless errant
10 reporting, but defendant MERRICK BANK CORP, has a "mail only", communication policy,
11 with their consumers.

12      20. Plaintiff also made multiple demands on all three Credit Reporting Agencies to
13 request that they remove the derogatory marks on her credit reports, all to no avail.

14      21. As a result of the derogatory marks reported by Defendant to the CRAs, Plaintiff now
15 had a diminished credit score of (557) and (511) on her credit report which made her a bad credit
16 risk to lenders.

17      22. Each of the Credit Reporting Agencies, Experian, Equifax, and Transunion, sent
18 notices of Plaintiff's dispute to Defendant pursuant to Section 1681i(a)(2) of the Act. Defendant
19 was thereafter under a duty to reasonably investigate Plaintiff's dispute and to modify, delete or
20 block the information if the investigation finds the information is incomplete or inaccurate
21 pursuant to the section 15 U.S.C. 1681s-2(b)(1)(A) and (E).

22      23. Plaintiff is informed that Defendant violated 15 U.S.C. 1681s-2(b)(1)(A) by failing to
23 reasonably investigate Plaintiff's dispute after receiving notice from the CRAs. Specifically,
24 Plaintiff is informed that Defendant, after receiving notice of Plaintiff's dispute from each CRA,
25 should have discovered from its records, including the letters sent by Plaintiff to Defendant, that
26 this was a clear identity theft violation.

27
28

24. Plaintiff is informed that Defendant violated 15 U.S.C. 1681s-2(b)(1)E by failing to discover and remove the derogatory delinquent payments on Plaintiff's credit report. In addition, Defendant should have reported to each CRA that Plaintiff disputed the account information.

25. Defendant's failure to correct the above stated inaccuracies on Plaintiff's credit report was willful and in reckless disregard of its duty to refrain from reporting inaccurate information. Consequently, Defendant willfully and recklessly failed to comply with its duty to investigate Plaintiff's dispute under 15 U.S.C. 1681(n) and (o).

26. On information and belief, Defendant either made no investigation, or recklessly investigated the disputed items after receiving notice of items in dispute by the CRAs about Plaintiff.

27. Plaintiff has spent many hours and expended significant funds in an effort to get the derogatory reports off of her credit report due to the lack of investigation or negligent investigation by Defendant.

28. The Fourth Circuit has recently held that after receiving a notice of dispute, a furnishers decision to continue reporting a disputed debt without any notation of the dispute, presents a cognizable claim under 1681s 2(b). See; Saunders v Branch Baking & Trust Co of VA.,526 F3d 142 150, (4TH CIR 2008). As of this filing, there is *no*, notation, of a dispute inserted in Ms. June Latryle Pattons credit file, in any of the 3 major CRA reports.

29. As a direct and proximate result *actual harm* of Defendant's willful, reckless and untrue communications, Plaintiff has suffered great economic pain and suffering, directly, but not limited to reviewing credit reports from all three CRAs, continued impairment of her credit score, and such other and further expenses in an amount to be proved at trial.

30.     As a result of willful recklessness by defendant, plaintiff was denied a "dream home", (actual harm), home loan, MAY, 27, 2021, amount of loan, $237,500, directly leading to plaintiff ending up essentially "homeless", being forced to move in and domicile with said compassionate relatives.

31. FCRA allows penalties of 1,000.00 per every unknowing violation, and 2500.00, per every willful/knowing violation.

- 6 -

32. The derogatory reports remain on Plaintiff's credit report as of the time of this filing.

33. Plaintiff has yet to regain her "good name", in the competitive financial community.

34. Wherefore, Plaintiff prays for judgement as set forth below;

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## AGAINST DEFENDANT MERRICK BANK CORP

35.. Plaintiff hereby incorporates by reference each and every paragraph stated above.

36. Defendant MERRICK BANK CORP is a "furnisher" as that term is used in Section 1681s-2 of the FCRA and is required to provide notice to a consumer as follows:

(7) Negative Information

1. (A) Notice to Consumer Required

   (i) *In general.* **If any financial institution that extends credit and regular and in the ordinary course of business furnishes information to a consumer reporting agency described in section 603(p) furnishes negative information to such an agency regarding credit extended to customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer.**

   (ii) *Notice effective for subsequent submissions.* After providing such notice, the financial institution may submit additional negative information to a consumer reporting agency described in section 603(p) with respect to the same transaction, extension of credit, account, or customer without providing additional

2. (B) Time of Notice

   (i) *In general.* The notice required under subparagraph (A) shall be provided to the customer **prior to, or no later than 30 days after, furnishing the negative information to a consumer reporting agency** described in section 603(p).

   (ii) *Coordination with new account disclosures.* If the notice is provided to the customer prior to furnishing the negative information to a consumer reporting agency, the notice may not be included in the initial disclosures provided under section 127(a) of the Truth in Lending Act.

- 7 -

COMPLAINT: PATTON v MERRICK BANK

3. (C) *Coordination with other disclosures.* The notice required under subparagraph (A) –

    (i) may be included on or with any notice of default, any billing statement, or any other materials provide to the customer; and

    (ii) must be clear and conspicuous. *See also 12 CFR Part 222, App B 70 Fed. Reg. 33281 (06/15/04)*

4. (D) Model Disclosure

    (i) *Duty of Bureau.* The Bureau shall prescribe a brief model disclosure that a financial institution may use to comply with subparagraph (A), which shall not exceed 30 words.

    (ii) *Use of model not required.* No provision of this paragraph may be construed to require a financial institution to use any such model form prescribed by the Bureau.

    (iii) *Compliance using model.* A financial institution shall be deemed to be in compliance with subparagraph (A) if the financial institution uses any model form prescribed by the Bureau under this subparagraph, or the financial institution uses any such form and rearranges its format.

(E) *Use of notice without submitting negative information.* No provision of this paragraph shall be construed as requiring a financial institution that has provided a customer with a notice described in subparagraph (A) to furnish negative information about the customer to a consumer reporting agency.

(F) Safe harbor. A financial institution shall not be liable for failure to perform the duties required by this paragraph if, at the time of the failure, the financial institution maintained reasonable policies and procedures to comply with this paragraph or the financial institution reasonably believed that the institution is prohibited, by law, from contacting the consumer.

(G) *Definitions.* For purposes of this paragraph, the following definitions shall apply:

    (i) The term "negative information" means information concerning a customer's delinquencies, late payments, insolvency, or any form of default

    (ii) The terms "customer" and "financial institution" have the same meanings as in section 509 Public Law 106-102. 15 U.S.C. § 1681s-2(a)(7).

**(b) Duties of furnishers of information upon notice of dispute**

- 8 -

> (1) *In general.* After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> > (A) conduct an investigation with respect to the disputed information;
> >
> > (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> >
> > (C) report the results of the investigation to the consumer reporting agency;
> >
> > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> >
> > (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
> >
> > > (i) modify that item of information;
> > > (ii) delete that item of information; or
> > > (iii) permanently block the reporting of that item of information
>
> (2) Deadline
> A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.
> /Emphasis Added./

37. Section 1681n of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act (*See* 15 U.S.C. §1681n(a)).

38. Section 1681o of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

**"MERRICK BANK CORP" Failure to Provide Notices and Reports.**

39. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in

- 9 -

COMPLAINT: PATTON v MERRICK BANK

consumer's file is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

**40.** The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15U.S.C. § 1681*i*(a)(5)(A).

**41.** On multiple occasions in 2020/2021, Plaintiff, (in good faith), initiated disputes with each CRA, Equifax, Experian, and Transunion, as well as Defendant MERRICK BANK CORP and requested that they correct and /or delete specific item in her credit file.

**42.** Plaintiff specifically advised Defendant on multiple occasions that the derogatory information furnished to the CRAs was not accurate and requested the credit information be corrected accordingly.

**43.** Either Defendant conducted no investigation of Plaintiff's disputes, or such "investigations" were shoddy as to allow objectively false and highly damaging information to remain on Plaintiff's credit file.

**44.** By failing to provide investigation regarding Plaintiff's disputes in this regard, MERRICK BANK CORP willfully and/or negligently violated 15 U.S.C. § 1681*s*-2 with respect to each request lodged by Plaintiff.

**45.** As a direct and proximate result of Defendant's repeated disregard of its obligation to provide notice to Plaintiff for each derogatory mark reported to a CRA regarding Plaintiff as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

**46.** As a direct and proximate result of Defendant's willful and/or arrogant reckless refusal to conduct reasonable investigations as mandated by the FCRA and as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of credit financing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus

- 10 -

attorneys' fees and punitive damages, together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

**47.** Upon information and belief, over the past three (3) years, Defendant MERRICK BANK CORP has engaged in a pattern and practice of refusing to provide notice to consumers of reporting derogatory information to CRAs.

**48.** Upon information and belief, Defendant MERRICK BANK CORP has exhibited a pattern and practice of refusing to correct consumer credit files after being noticed about false derogatory information contained in such files, and in failing to make notations, of any said dispute, and/or provide such corrections to consumers about making derogatory reports, ultimately valuing its own bottom line above its *"grave responsibility"* to accurately report *"sensitive"* data on vulnerable consumers.

**49.** Defendant MERRICK BANK CORP pattern of refusal to correct derogatory information as mandated by the FCRA reveals a *conscious and reckless disregard* of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for imposition of statutory damages, an assessment of punitive damages and attorneys' fees and costs against Defendant, pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE**, Plaintiff prays for judgement against the defendant and for each of the following relief according to proof of trial:

1. Actual damages per FCRA in an amount of $273,500;
2. Special damages in the amount to be proved by trial;
3. Punitive damages as provided for by 15 U.S.C. § 1681*n* (2);
4. Statutory damages as provided for by 15 U.S.C. § 1681*n* (2);
5. Attorney's Fees, Expert Witness Fees and Costs of suit herein, as provided for by 15 U.S.C. § 1681*n* (3) and 15 U.S.C. § 1681*o* (2); and;
6. For such other and further relief as this Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

Dated this 7th day of July 2021

Respectfully submitted,

_____
JUNE LATRYLE PATTON

**VERIFICATION AND DEMAND FOR JURY TRIAL**

I, the undersigned, am the plaintiff in this matter and make this verification and demand for jury trial; I have read the foregoing complaint, know the contents thereof, and from information and belief, believe the same to be true. I verify under penalty of perjury that the foregoing is true and correct. Furthermore, I demand a jury trial in this action.

DATED: July 7, 2021

_____
JUNE LATRYLE PATTON

- 12 -

COMPLAINT: PATTON v MERRICK BANK

Attachment 11 - Certificate of Service

## CERTIFICATE OF SERVICE

I, _____J. Latryle Patton_____, Plaintiff pro se, do hereby certify that on the __7th__ Day of __July__, __2021__, a true and correct copy of the foregoing pleading was forwarded by mailed certified mail to the defendant in this case at:

<u>Merrick Bank Corporation</u>

<u>10705 South Jordan Gateway #200</u>

<u>South Jordan, Utah 84095</u>

Dated: July 7, 2021

_____
Signature of Plaintiff